AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the

Northern District of Texas

**FILED**

**February 12, 2024**

KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Seizure of *(Briefly describe the property to be seized)* the cryptocurrency wallet with the identifier 0x5d9bc615A06412aDfC6317C9ff228110ec98fF98, including approximately 0.392548046893253843 ETH, 1,447,841.256478 USDT, and 677,173,700699 USDC | ) ) ) ) ) ) Case No.   3:24-MJ-154-BK |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Central_____ District of _____California_____ is subject to forfeiture to the United States of America under _18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 21 U.S.C. § 853(l), and 28 U.S.C. § 2461(c)_ *(describe property)*:

the cryptocurrency wallet with the identifier 0x5d9bc615A06412aDfC6317C9ff228110ec98fF98, including approximately 0.392548046893253843 ETH, 1,447,841.256478 USDT, and 677,173,700699 USDC (Subject Account A)

The application is based on these facts:

See the attached affidavit of FBI Special Agent ▮▮▮▮▮ which is incorporated herein by this reference.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

▮▮▮▮▮  Special Agent FBI
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☒ Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1(d)(3).

Date:  February 12, 2024

City and state:  Dallas, Texas

_____
*Judge's signature*

United States Magistrate Judge Renee Harris Toliver
*Printed name and title*

**SEALED**

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| the cryptocurrency wallet with the identifier | ) | Case No.  3:24-MJ-154-BK |
| 0x5d9bc615A06412aDfC6317C9ff228110ec98fF98, | ) | |
| including approximately 0.392548046893253843 ETH, | ) | |
| 1,447,841.256478 USDT, and 677,173.700699 USDC | ) | |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ Central _____ District of _____ California _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

the cryptocurrency wallet with the identifier 0x5d9bc615A06412aDfC6317C9ff228110ec98fF98, including approximately 0.392548046893253843 ETH, 1,447,841.256478 USDT, and 677,173.700699 USDC (Subject Account A)

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property and that an order under 21 U.S.C. § 853(e) is not sufficient to assure the availability of the property for forfeiture.
**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 02/26/2024 _____
*(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to
_____ United States Magistrate Judge Renee Harris Toliver _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days (not to exceed 30)  ❏ until, the facts justifying, the later specific date of _____

Date and time issued:  _____ 02/12/2024 1:15 pm _____

City and state:  _____ Dallas, Texas _____

*Judge's signature*

United States Magistrate Judge Renee Harris Toliver
*Printed name and title*

SEALED

AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
Northern District of Texas

**FILED**

**February 12, 2024**

KAREN MITCHELL

CLERK, U.S. DISTRICT COURT

In the Matter of the Seizure of
*(Briefly describe the property to be seized)*

A Lexus LX 570 with Vehicle Identification Number (VIN) ▇▇▇▇▇▇

)
)
)
)
)

Case No.    3:24-MJ-157-BK

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Central___ District of ___California___ is subject to forfeiture to the United States of America under ___18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 21 U.S.C. § 853(l) and 28 U.S.C. § 2461(c)___ *(describe property):*

A Lexus LX 570 with Vehicle Identification Number (VIN)▇▇▇▇ ▇▇▇▇(Subject Vehicle A)

The application is based on these facts:

See the attached affidavit of FBI Special Agent Matthew Crane, which is incorporated herein by this reference.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

▇▇▇▇▇▇ Special Agent FBI
_____
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☒ Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 41(d)(3).

Date: __February 12, 2024__

_____
*Judge's signature*

City and state: __Dallas, Texas__

United States Magistrate Judge Renee Harris Toliver
_____
*Printed name and title*

**SEALED**

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | |
|---|---|
| In the Matter of the Seizure of | ) |
| *(Briefly describe the property to be seized)* | ) |
| A Lexus LX 570 with Vehicle Identification | ) Case No.   3:24-MJ-157-BK |
| Number (VIN) ▌▌▌▌▌▌▌▌ | ) |
| | ) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ Central _____ District of _____ California _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

A Lexus LX 570 with Vehicle Identification Number (VIN) ▌▌▌▌▌▌ (Subject Vehicle A)

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property and that an order under 21 U.S.C. § 853(e) is not sufficient to assure the availability of the property for forfeiture.
**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 02/26/2024 _____
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to

United States Magistrate Judge Renee Harris Toliver                          .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days (not to exceed 30)   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____ 02/12/2024 1:27 pm _____   _____
                                                                                    *Judge's signature*

City and state:   _____ Dallas, Texas _____   United States Magistrate Judge Renee Harris Toliver
                                                                        *Printed name and title*

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT

I, ▮▮▮▮▮▮▮▮ a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby declare as follows:

### INTRODUCTION AND PURPOSE OF AFFIDAVIT

1.     This affidavit is submitted in support of an application for issuance of seizure warrants for the property described in Attachment A, specifically cryptocurrency holdings and vehicles, to wit:

a.     The cryptocurrency wallet that is constituted by the 24-word seed phrase discovered in the file ъезназвания.rtf, located on the iCloud search warrant returns from 2:22-SW115 (EDVA) which encompasses the address having the identifier 0x5d9bc615A06412aDfC6317C9ff228110ec98fF98, including approximately 0.392548046893253843 ETH, 1,447,841.256478 USDT, and 677,173.700699 USDC (hereinafter "**Subject Account A**");

b.     Binance Holdings Limited account number ▮▮▮▮ belonging to Ianis Antropenko which includes Bitcoin address 1GfSpXKtx9DEECqNhSTfmTzPtkHzourPgR and Ethereum address 0x543253568d9e218e8d15cc5060e68d98cc8f4b30 (hereinafter "**Subject Account B**");

c.     Binance Holdings Limited account number ▮▮▮▮ belonging to ▮▮▮▮▮▮▮▮ which includes Bitcoin address 1G4X91UaWPiKPFGCceGs7ogVs3TdK2f5SZ (hereinafter "**Subject Account C**");

d.     A Lexus LX 570 with Vehicle Identification Number (VIN) ▮▮▮▮▮▮▮▮ (hereinafter "**Subject Vehicle A**"); and

1

e.    A 2022 BMW X6M with VIN ███████████████ (hereinafter "**Subject Vehicle B**").

2.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Ianis Antropenko ("ANTROPENKO") and ███████████████████████ have violated Title 18, United States Code, Sections 1030 (Computer Fraud), 1343 and 1349 (Wire Fraud and Wire Fraud Conspiracy), 1956 (Money Laundering), and 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity). There is also probable cause to believe that Subject Account A, Subject Account B, and Subject Account C (together, the "Subject Accounts") all contain the proceeds and/or property involved in ANTROPENKO's and ████████████ participation in the wire fraud and money-laundering activities described below. There is also probable cause to believe that Subject Vehicle 1 and Subject Vehicle 2 (together, the "Subject Vehicles") were purchased with proceeds from those activities. The Subject Accounts and Vehicles are accordingly subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461(c). Further, pursuant to Title 21, United States Code Section 853(l), a District Judge may issue a seizure warrant for property subject to forfeiture without regard to the location of the property. Because the government anticipates bringing criminal charges against ANTROPENKO and ████████████ in the Northern District of Texas, I am submitting the request for the attached seizure warrants in this District. Accordingly, I request that the Court authorize the attached warrant for seizure of the assets described herein.

2

## AFFIANT BACKGROUND

3.      I am an investigative law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

4.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. Additionally, I am authorized, pursuant to 18 U.S.C. § 3056(c), to execute warrants issued under the laws of the United States I have been a Special Agent with the Federal Bureau of Investigation (FBI) since September 2021. I am assigned to work cyber and organized crime investigations to include major theft, money laundering, computer intrusions, internet fraud, wire fraud, bank fraud, and financial institution fraud within the Norfolk, Virginia Division. Previously I was assigned to San Diego, where I worked Violent Crime violations.

5.      I completed approximately twenty weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. Additionally, I have received two years of specialized training from the FBI's Accelerated Cyber Training Program. I have received training and gained experience in arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. I have participated in the execution of search

3

warrants, including those involving the search and seizure of computers, telephonic devices, and digital currency.

6.    The facts in this affidavit come from my personal observations and knowledge, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All dates are on or about the date specified. All amounts are approximate.

## APPLICABLE AUTHORITY

CRIMINAL STATUTES

7.    Title 18, United States Code, Section 1343, makes it a crime to knowingly execute, or attempt to execute, a scheme or artifice to (1) obtain money or property by means of false or fraudulent pretenses, representations, or promises; (2) that are material; (3) with the intent to defraud; and (4) where the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

8.    Title 18, United States Code, Section 1956(a)(1)(B)(i) makes it a crime to conduct or attempt to conduct a financial transaction involving the proceeds of specified unlawful activity knowing that the transaction is designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of those proceeds. Wire fraud activity conducted in violation of Title 18, United States Code, Section 1343 is a specified unlawful activity pursuant to Title 18, United States Code, Section 1956(c)(7), per its cross reference to Title 18, United States Code, Section 1961(1).

9.      Title 18, United States Code, Section 1957 prohibits a person from knowingly conducting a monetary transaction in criminally derived property in an amount greater than $10,000, which is, in fact, proceeds of a specified unlawful activity. The most significant difference between sections 1956 and 1957 is the intent requirement.   Under section 1957, the four intents have been replaced with a $10,000 threshold amount for each non-aggregated transaction and the requirement that a financial institution be involved in the transaction.

SEIZURE AND FORFEITURE STATUTES

10.     **Wire fraud forfeiture:** Title 18, United States Code, Section 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable" to the violation of an enumerated statute constituting a specified unlawful activity "is subject to forfeiture to the United States." Specified unlawful activities are detailed therein, as well as at Title 18, United States Code, Sections 1956(c)(7) and 1961(1), which enumerates Title 18, United States Code, Section 1343 as a specified unlawful activity. This section provides both civil forfeiture authority and criminal forfeiture authority by virtue of Title 28, United States Code, Section 2461(c).

11.     **Money-Laundering Forfeiture:** Title 18, U.S.C. § 981(a)(1)(A) provides that property involved in, or traceable to property involved in, a violation of Section 1956 or 1957 is subject to civil forfeiture.  Title 18, U.S.C. § 982(a)(1) provides that a person convicted of a violation of section 1956 or section 1957 shall criminally forfeit to the United States any property involved in, or traceable to property involved in, the offense.

5

12.    **Seizure warrant authority:** Title 18, United States Code, Sections 981(b)(2) and (3) provide that seizures executed for purposes of civil forfeiture shall be made pursuant to a warrant issued in the same manner as provided for a criminal search warrant under the Federal Rules of Criminal Procedure. Moreover, seizure warrants may be issued in any district in which a forfeiture action may be filed and may be executed in any district in which the property is found or where acts giving rise to forfeiture occurred. 28 U.S.C. §§ 1355, 1395. Federal Rule of Criminal Procedure 41 governs the issuance of criminal search and seizure warrants.

13.    Title 28, United States Code, Section 2461(c) provides that the procedures (including seizure warrants) in Title 21, United States Code, Section 853 control criminal forfeiture. Section 853(f) of the same title provides that the government may request a warrant for the seizure of property for forfeiture in the same manner as it may seek a search warrant. Title 18, United States Code, Section 982(b)(1) also provides that seizures for criminal forfeiture shall be made pursuant to a warrant issued in the same manner as provided for a criminal search warrant under the Federal Rules of Criminal Procedure, and cross-references Title 21, United States Code, Section 853. This warrant seeks seizure authority under both the criminal and civil forfeiture statutes.

14.    Title 21, United States Code Section 853(f) provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a[] [protective] order under [21 U.S.C. § 853(e)] may not be sufficient to assure the availability of the property for forfeiture." As set forth further below, there is a

6

substantial risk that the assets in the Subject Account will be withdrawn, moved, dissipated, or otherwise become unavailable for forfeiture unless immediate steps are taken to secure them. I therefore submit that a protective order under 21 U.S.C. § 853(e) would not be sufficient to assure that the assets in the Subject Account will remain available for forfeiture. Title 21, United States Code Section 853(l) further provides that a district court "shall have jurisdiction to ender orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section." I therefore submit this seizure warrant in the Northern District of Texas, the anticipated venue of criminal charges, despite the location of the property outside the district.

15.    Based on my training, experience, and the information contained in this affidavit, there is probable cause to believe that funds in the Subject Account are subject to both civil and criminal forfeiture as proceeds traceable to a Ransomware scheme, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) and/or as property involved in money-laundering, pursuant to Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(A) and Title 28, United States Code, Section 2461(c).

## BACKGROUND ON CRYPTOCURRENCY AND RANSOMWARE

16.    Virtual Currency: Virtual currency, also referred to as cryptocurrency, is a form of value that is circulated over the Internet. Virtual currencies are generally not issued by any government, bank, or company, but rather are controlled through computer software operating via a decentralized, peer-to-peer network. To acquire virtual

currencies, a typical user will purchase them from a virtual currency exchange, which is a business that functions as a trading platform and allows customers to purchase, sell, or trade virtual currencies, including for other forms of value, such as conventional money (e.g., U.S. dollars, Russian rubles, euros). Exchanges can be brick-and-mortar businesses (exchanging traditional payment methods and virtual currencies) or online businesses (exchanging electronically transferred money and virtual currencies). Virtual currency exchanges doing business in the United States are regulated under the Bank Secrecy Act, codified at 31 U.S.C. § 5311 et seq., and must collect identifying information of their customers and verify their clients' identities.

17.    Bitcoin: Bitcoin (sometimes abbreviated as "BTC") is one type of virtual currency (others include Ethereum (ETH or Ether), Tether (USDT), and USD Coin (USDC)). Thousands of computers connected via the Internet run Bitcoin software and participate in the Bitcoin network. This software provides all necessary services to transact in Bitcoin, including (i) allowing users to create "Bitcoin addresses," roughly analogous to accounts; (ii) injecting new Bitcoin into circulation; and (iii) securely transferring Bitcoin from one Bitcoin address to another.

18.    To send and receive Bitcoin, the parties involved in a transaction use Bitcoin "addresses." A Bitcoin address is somewhat analogous to a bank account number and is represented as a 26-to-35-character-long case-sensitive string of letters and numbers. Each Bitcoin address is controlled through the use of a unique private key. This key is the equivalent of a password or PIN and is necessary to access the funds associated with a Bitcoin address. Only the holder of a Bitcoin address's private key can

authorize transfers of Bitcoin from that address to other Bitcoin addresses. Users can operate multiple Bitcoin addresses at any given time and can use a unique Bitcoin address for each transaction.

19.     When a sender initiates a Bitcoin transaction, the sender transmits a transaction announcement across the peer-to-peer Bitcoin network. To complete a transaction, a sender needs only the Bitcoin address of the receiving party and the sender's own private key. This information on its own rarely reflects any identifying information about either the sender or the recipient. As a result, little to no personally identifiable information about the sender or recipient is transmitted in a Bitcoin transaction itself. Once the sender's transaction announcement is verified by the network, the transaction is added to the blockchain, a decentralized public ledger that records every Bitcoin transaction. The blockchain logs every Bitcoin address that has ever received Bitcoin and maintains records of every transaction for each Bitcoin address.

20.     While a Bitcoin address owner's identity is generally anonymous within the blockchain (unless the owner chooses to make information about the owner's Bitcoin address publicly available), investigators can often use the blockchain to identify the owner of a particular Bitcoin address. Because the blockchain serves as a searchable public ledger of every Bitcoin transaction, investigators can trace transactions to, among other recipients, virtual currency exchanges.

21.     The storage of virtual currency is typically associated with an individual "wallet," which is similar to a virtual account. Wallets can interface with blockchains and generate and/or store the addresses and private keys. Wallets can be housed in a

9

variety of forms, including as an online account associated with a cryptocurrency exchange. Many users back up their virtual currency wallets using "recovery seeds." A recovery seed, also known as a root key, seed phrase, or recovery phrase, is a list of words that, when entered in a specific order into virtual currency wallet software, allows whoever is in possession of the words to recreate access to virtual assets within the wallet. Additional security safeguards for wallets can include two-factor authorization (such as a password and a phrase). Based on my background, training, and experience, I know that individuals possessing virtual currencies often have safeguards in place to ensure that their cryptocurrencies are secured in the event that their assets become vulnerable to seizure by law enforcement and/or unauthorized transfer. Additionally, individuals may store copies of their private keys in multiple locations or entrust them to criminal associates who can use the private keys to transfer the funds out of the reach of law enforcement if the main individual is searched or arrested.

22.    Most virtual currency exchanges act as both a trading platform and storage platform. An exchange typically allows trading between the U.S. dollar, other fiat currencies, Bitcoin, and other virtual currencies. Many virtual currency exchanges also store their customers' virtual currency in exchange-based wallets that are associated with each customer's account(s). These exchanges act as money services businesses and are legally required to conduct due diligence of their customers and to have anti-money laundering checks in place. Virtual currency exchanges doing business in the United States are regulated under the Bank Secrecy Act, codified at 31 U.S.C. § 5311, et seq.,

and must collect identifying information of their customers and verify their clients'
identities.

23.    Because virtual currency exchanges generally collect identifying
information about their customers, subpoenas or other appropriate legal process
submitted to exchanges can, in some instances, reveal the true identity of an individual
responsible for a Bitcoin transaction. For this reason, many criminal actors who use
Bitcoin to facilitate their illicit transactions look for ways to gain greater anonymity.

24.    As previously stated, while the identity of a Bitcoin address owner is
generally anonymous, law enforcement can often identify the owner of a particular
Bitcoin address by analyzing the blockchain. Such analysis can reveal additional
addresses controlled by the same individual or entity. For example, a user or business
may create many Bitcoin addresses to receive payments from different customers. When
the user wants to complete a transaction with the Bitcoin that he or she has received (e.g.,
to exchange Bitcoin for other currency or to use Bitcoin to purchase goods or services),
the user may group those addresses together to send a single transaction. Investigators
may then conclude that each of the addresses involved in paying for the transaction are
controlled by the same user.

25.    Law enforcement uses third-party commercial software offered by several
different blockchain analysis companies to investigate Bitcoin transactions. These
companies analyze the Bitcoin blockchain and attempt to identify the individuals or
groups involved in transactions. Specifically, these companies create large databases that
group Bitcoin addresses into "clusters" through analysis of data underlying Bitcoin

11

transactions.  A cluster is a collection of Bitcoin addresses that are assessed to be controlled by one person or entity.  In other words, a cluster is an estimate of all the Bitcoin addresses (and their Bitcoins) contained in a user's Bitcoin wallet or wallets.

26.     The methods used by blockchain analysis companies have been independently validated by computer scientists, who have shown that they can use "clustering" methods to take advantage of clues regarding how Bitcoin are typically aggregated or split up to identify Bitcoin addresses and their respective account owners. This blockchain analysis software is an anti-money laundering software used by financial institutions and law enforcement organizations worldwide.  It has supported many unrelated law enforcement investigations, has been the basis for numerous search and seizure warrants, and has been shown to be reliable.

27.     Ransomware is a type of malware that is used to compromise and restrict access to a victim's computer network in order to extract a ransom from the victim by encrypting data on the network without the victim's consent. Ransomware encrypts files on victims' computers, and ransom notes direct them how to contact its operators to pay a ransom and get a decryption key to regain access to their files. There are different variants of ransomware circulating; one of them is known as Zeppelin. Zeppelin operates as "Ransomware-as-a-Service (RaaS).  RaaS is a business model whereby malware developers lease out access to ransomware to other cybercriminals.

28.     In a RaaS scheme, the developers are responsible for creating and updating the ransomware and for maintaining the Internet infrastructure that enables the group's illicit activities. "Affiliates" are responsible for identifying and attacking high-value

victim institutions with the ransomware. After a victim pays, developers and affiliates share the ransom.

29.    Indicators of compromise (IOCs) are information about a specific security threat that can help security teams determine if an attack has taken place. This data can include details such as the characteristics of malware used, the Internet Protocol (IP) addresses involved, and other technical details.

## SUMMARY OF PROBABLE CAUSE

30.    On or about March 2020, through the present, approximately 138 U.S. victims, including ████████████████████████ have been targeted by Zeppelin Ransomware. As explained below, there is probable cause that ANTROPENKO and ███████████ are involved in extorting victims using ransomware and facilitating the movement of ransomware payments. There is probable cause to believe ANTROPENKO has extorted ransomware victims by email, and that ANTROPENKO and ███████████ have participated in the laundering of ransomware proceeds. The probable cause includes tracing the path of ransom payments on the blockchain, their use of money laundering techniques and services, and other financial irregularities. There is probable cause to believe that the SUBJECT ACCOUNTS and SUBJECT VEHICLES are or are derived from criminal proceeds.

## FACTS SUPPORTING PROBABLE CAUSE

31.    Based on my training and experience, my personal involvement in this investigation, conversations with other law enforcement officers, and review of reports and other documents prepared by law enforcement officers, I am aware of the following:

32.    Starting in or about 2019, criminal actors have used a type of ransomware known as Zeppelin to target a wide range of businesses, including manufacturers, technology companies, and especially organizations in the government industries. The deployment of Zeppelin ransomware has been associated with certain IOCs known to law enforcement, including the FBI, as well as the information security community.

33.    On or about March 18, 2020, representatives for ███████████████ ████████████ located in Newport News, Virginia, contacted the FBI to report they had been victimized in a ransomware attack. Computer anti-virus software employed by ████ indicated that dozens of computers had been infected with ransomware, and their security staff identified it as Zeppelin ransomware.

34.    In or about March 2020 ███████████████████████████ contacted the FBI to request assistance with an intrusion into its computer network. FBI response teams found Zeppelin ransomware had been used in the attack, based on forensic analysis of the software and the analysis of the ransom note, and similarities between the attack and other known Zeppelin ransom attacks.

35.    On April 28, 2020, the FBI opened a full investigation to identify the developers and affiliates responsible for Zeppelin ransomware. To date, 138 U.S. victims have been targeted and exploited by Zeppelin ransomware, as indicated by forensic analysis and other techniques, with an unknown number of international victims. One such identified victim was a professional services company located in Dallas, Texas. Its computer network was infected with Zeppelin ransomware, as indicated by FBI analysis of the ransomware note, on or about January 8, 2021, with a ransom note requesting the

14

victim contact the email address china.helper[@]aol.com.  As explained below, there is probable cause to believe that this email address is controlled by ANTROPENKO.

36.     The company contacted the ransomware operator to negotiate a ransom. After negotiation, the victim sent 0.17720309 BITCOIN to Bitcoin address 3LDYxudYbBssSnosV2SfRKFVdNxUcDSfNt, which was worth approximately $6,293 at the time of transaction. After the transaction, the decryption tool was sent to the victim.

**Email address china.helper[@]aol.com  and Ties to ANTROPENKO**

37.     On August 8, 2022, the Honorable Lawrence R. Leonard, United States Magistrate Judge, Eastern District of Virginia, in case number 2:22-SW116, issued an order directing Oath Holdings, Inc. to provide records associated with the email account china.helper[@]aol.com.   The records indicated that the user of china.helper[@]aol.com (hereinafter "china.helper")  utilized the account repeatedly for conducting ransomware attacks, and other criminal schemes,  including during the timeframe of the attack on the Dallas company.

38.     For instance, on January 13, 2021, the user controlling the account decrypting2022[@]gmail.com  sent china.helper the following: "Dude, what is the problem with the client we asked you before? They paid the ransom and you did not give the tool. This is a good colleague of ours. If they say something wrong and make you angry, or what reason can you tell us? No problem,  you can give us the tools and we will send them . . ."  China.helper responded: "he must to contact with me in jabber if he want help from me as soon as possible!"

39.    The FBI found a total of at least 48 cryptocurrency addresses referenced in china.helper's emails that received or negotiated ransom payments, and also found other emails about other ransomware attacks.

40.    China.helper's correspondence with victims entailed providing them advice for acquiring cryptocurrency and how to decrypt their data after payment is made. In instances where ransoms were paid, ransoms were typically in thousands of dollars with some over $20,000.

41.    The china.helper[@]aol.com account also contained multiple recovery email accounts. Based on my training and experience, I know that recovery email accounts are alternate email accounts that can be associated with a primary email account so that if the user gets locked out of the primary email account, the user can verify their identity using the recovery email account to reset the password on the primary account. Thus, in my training and experience, I know that recovery email accounts are typically controlled by the same person who controls the associated primary email account. According to the records received from Oath holdings, the recovery emails associated with china.helper[@]aol.com included whysoseriously[@]protonmail.com, which was added as a recovery email address on February 23, 2019, and skunk_woman[@]protonmail.com, added August 30, 2019.

42.    According to records obtained from Paypal, Inc. ("Paypal"), whysoseriously[@]protonmail.com was the registration email address associated with a PayPal account in the name of Ianis Aleksandrovich ANTROPENKO, with the same date

16

of birth , ███████████ and Russian telephone number ███████████ used on a
U.S. visa application submitted in the name of ANTROPENKO.

43.    Email verification is a process that helps verify if there is an actual user on
the receiving end of a particular email address.  PayPal records indicate that the user of
the whysoseriously[@]protonmail.com  email account had verified the legitimacy of the
email account and its association to the PayPal account in the name of ANTROPENKO.

44.    The FBI also identified a Bank of America bank account owned by
ANTROPENKO and sent a subpoena for its records. The FBI received responsive
records, including account information that confirmed the account was owned by
ANTROPENKO. The username for the account was "skunk_woman." This is similar to
the other recovery email for the china.helper  account: skunk_woman[@]protonmail.com.

**Ransomware Proceeds Were Laundered by ANTROPENKO and**
████████████

45.    The FBI also investigated the ransom payment that the Dallas company
sent to the address provided by china.helper.  The FBI has access to a proprietary software
tool that analyzes financial transactions on the Bitcoin blockchain and identifies clusters
of accounts that are assessed to be controlled by one person or entity.

46.    Based on my training and experience, I know that the proprietary software
tool used by the FBI to analyze financial transactions reliably identifies common
ownership of Bitcoin accounts.

47.    Using the software, the FBI queried Bitcoin address
3LDYxudYbBssSnosV2SfRKFVdNxUcDSfNt (the address that received the Dallas

17

company's ransom payment) and found that it is part of Bitcoin Cluster

3QaUuXQnJk9gScckR9pLgyoG6bqBP7gMER ("CLUSTER 1").

48.    The FBI also analyzed certain transactions relating to CLUSTER 1 and

independently observed patterns that indicate the addresses in CLUSTER 1 share a

common owner. Specifically, the FBI employed "co-spending" analysis. Co-spending is

when a number of Bitcoin addresses are used to send Bitcoins in a single transaction,

which indicates that a single owner likely holds the private keys for those addresses.

49.    As of February 5, 2024, CLUSTER 1 had received a total of approximately

101 Bitcoin. Of that, CLUSTER 1 had sent 64.6 Bitcoin to a foreign-based "mixing

service" named ChipMixer. Mixing services involve a mechanism by which multiple

participants combine their Bitcoin payments with others' such that there are multiple

inputs and multiple outputs. Based on my training and experience, I know that criminal

actors use mixing services to launder cryptocurrency funds in an attempt to conceal the

origin of the funds and prevent tracing to recipients.

50.    Of note, ChipMixer operated on the darknet (i.e., an area of the internet that

is only accessible by users who utilize special software and/or have specific

authorization). It was responsible for laundering more than $3 billion worth of

cryptocurrency, between 2017 and the present, in furtherance of, among other activities,

ransomware, darknet market, fraud, cryptocurrency heists and other hacking schemes. It

was taken down by a coordinated international operation in or about March 2023, which

resulted in the FBI having the ability to trace the paths of transactions that ChipMixer

customers had attempted to obfuscate. The United States has charged the operator of ChipMixer with money laundering, among other crimes.

51.     In addition to tracing the ransom payment sent by the Dallas company, the FBI reviewed other Bitcoin addresses that china.helper sent ransomware victims. Several of these addresses were both a part of CLUSTER 1 and directly sent BITCOIN to ChipMixer. These transactions occurred between on or about January 12, 2021, and on or about February 14, 2021.

52.     Review of ChipMixer server data by FBI analysts determined the outbound destinations of the cryptocurrency sent to ChipMixer from CLUSTER 1. Specifically, eight transfers, totaling 7.99218581 BITCOIN, went from CLUSTER 1 to ChipMixer, then to an exchange account held by Binance Holdings, a foreign-based cryptocurrency exchange. For example, in one of the transactions, dated April 13, 2020, at 04:45 UTC, CLUSTER 1 sent 1.5 Bitcoin to ChipMixer. On April 13, 2020, at 5:05 UTC, ChipMixer sent 1.49997248 Bitcoin to the Binance account at issue, with the remaining 0.00002752 Bitcoin paid as a transaction fee.

53.     On October 14, 2021, the FBI sent a request to Binance for customer information related to the Bitcoin transactions identified above. Binance provided records that identified ANTROPENKO as the owner of the account that received the eight transfers totaling 7.99218581 BITCOIN, account number ▮▮▮▮▮▮▮ In addition to his name, Binance provided additional account registration information that confirmed his ownership of the account, including his date of birth, passport number, and phone

numbers that matched what he had submitted on his U.S. visa application and other information that the FBI had collected.

54.     FBI analysts also traced nine transfers, totaling 40.17349176 BITCOIN, that went from CLUSTER 1 to ChipMixer to another set of addresses. One of these addresses then sent 0.243 BITCOIN to Binance account number ███████

55.     In the subpoena to Binance discussed above, the FBI also requested information relating to account 41654054. Binance's responsive records indicated that this account was owned by ████████████ She also provided passport information, date of birth, and phone number information to Binance that matched what she provided on a U.S. visa application and other information in the FBI's possession.

56.     The FBI sent legal process to Apple, Inc. to determine whether there were Apple iCloud accounts associated with the phone numbers that ANTROPENKO and ██████████████ had supplied to Binance. In response, Apple identified iCloud accounts belonging to each of them. For both ANTROPENKO's iCloud account and ██████████████ iCloud account, the phone number matched associated with the iCloud account matched the phone number associated with the Binance account. Pursuant to a valid search warrant issued on August 5, 2022, Apple, Inc. provided records associated with the iCloud accounts for ANTROPENKO and ███████████

57.     ██████████████ iCloud account contained various photos and files. Among this data was a text file, the content of which included a list of 26 words. An FBI analyst recognized the middle 24 words to be a seed phrase. As discussed above, a seed phrase can generate a cryptocurrency wallet. Whoever controls the seed phrase can

control the wallet and the addresses within, and the seed phrase is generally only possessed by the owner of the wallet. FBI analysts utilized an offline tool, which mathematically determines the public cryptocurrency addresses associated to a particular seed phrase. The tool identified a total of 19 active Bitcoin addresses and one active ETH address. FBI analysts determined that these addresses had received a total of 40.17349176 Bitcoin from CLUSTER 1, after being first mixed through ChipMixer. Based on my training and experience, I believe that the existence of the seed phrase in ███████████ iCloud account indicates there is a substantial likelihood that ███████████ is either the owner of this wallet, or has knowingly assisted the owner of the wallet in storing the associated seed phrase.

58.    As of February 4, 2024, one address associated with this seed phrase contains a variety of cryptocurrency, including approximately 0.392548046893253843 ETH, 1,447,841.256478 USDT, and 677,173.700699 USDC. (The Ethereum blockchain allows for other types of cryptocurrency to be stored at an Ethereum address, so long as they utilize the Ethereum protocol.)

## OTHER EVIDENCE OF MONEY LAUNDERING

59.    [REDACTED] iCloud account contained images of some of her 2019 and 2021 tax returns, filed jointly with ANTROPENKO.  On their 2021 return, as shown below, ANTROPENKO and [REDACTED] claimed not to have received, sold, exchanged, or otherwise disposed of any virtual currency.  ANTROPENKO and [REDACTED] did claim $120,000 in capital gains income that year, but with no claimed wages.

60.    In 2019, ANTROPENKO and [REDACTED] claimed total income of $511, with no capital income gains reported. They reported that they had not engaged in virtual currency transactions.



Form **1040** U.S. Individual Income Tax Return **2021** — Department of the Treasury—Internal Revenue Service (99), OMB No. 1545-0074

Last name: ANTROPENKO

| Line | Description | Amount |
|---|---|---|
| 7 | Capital gain or (loss). Attach Schedule D if required. If not required, check here | 120,000 |
| 8 | Other income from Schedule 1, line 10 | 20,673 |
| 9 | Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your total income | 140,673 |
| 10 | Adjustments to income from Schedule 1, line 26 | 13,461 |
| 11 | Subtract line 10 from line 9. This is your adjusted gross income | 127,212 |
| 12a | Standard deduction or itemized deductions (from Schedule A) | 25,100 |
| 12c | Add lines 12a and 12b | 25,100 |
| 13 | Qualified business income deduction from Form 8995 or Form 8995-A | 0 |
| 14 | Add lines 12c and 13 | 25,100 |
| 15 | Taxable income. Subtract line 14 from line 11. If zero or less, enter -0- | 102,112 |

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency? Yes ☐ No ☒

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.    Form **1040** (2021)

61.    The FBI identified a Bank of America account owned by ANTROPENKO and received records for the account, in response to a subpoena. This account contained at least one deposit on or about December 20, 2019 from a company named Paxos. According to publicly available materials on Paxos's website, I know that Paxos is a company that offers cryptocurrency services, such as a cryptocurrency exchange.

62.    ███████████ iCloud account also contained images of large amounts of U.S. currency. Specifically, the account contained a photo of $100,000 USD that was placed in a bag, and another photo with approximately half of that cash removed and a note written in Cyrillic and English. The English portion of the note reads, "I took half 50000$ from 100000$". Metadata associated with the images indicates that the photos were taken on April 10, 2022 at 11:24:39 a.m., and April 10, 2022, at 11:25:00 a.m., as shown below (note the existence of a redaction to protect the security of FBI computer file systems):





63.    Based on my training and experience, I believe that U.S. currency that is handled as depicted in these photos is consistent with the laundering of criminally-derived proceeds.

64.    The Bank of America records for ANTROPENKO's account show that from January 2021 to May 2022, he made cash deposits to ATMs totaling approximately $79,413. These deposits were made in small increments of less than $10,000. In some cases, there were multiple deposits made on the same day, for less than $5,000. Based on my training and experience, I believe that these transactions are consistent with attempted evasion of structuring laws which were established to scrutinize suspicious transactions.

65.    On November 15, 2020, ANTROPENKO purchased a Lexus LX 570 with Vehicle Identification Number (VIN) ▮▮▮▮▮▮▮▮▮▮ for $123,351.23 **(Subject Vehicle A).** The following year, on November 2, 2021, ANTROPENKO and ▮▮▮▮▮▮▮▮ purchased a 2022 BMW X6M bearing VIN: ▮▮▮▮▮▮▮▮ for USD $150,000 in cash **(Subject Vehicle B)**.

66.    The value of the vehicles at the time of purchase was incommensurate with ANTROPENKO and ▮▮▮▮▮▮▮ combined reported annual income, which was less than the cost of a single vehicle. The purchase of the vehicles occurred during the period when ANTROPENKO and ▮▮▮▮▮▮▮ are known to have profited from ransomware.  In my experience, criminals frequently use the cash purchase of luxury vehicles to launder cash, as it allows them to conceal money earned from illegal activities.

26

67.     I submit that a protective or restraining order issued pursuant to 21 U.S.C. § 853(e) would be insufficient to ensure the availability of the funds in the Subject Accounts for forfeiture. Cryptocurrency can be transferred faster than traditional bank funds, and once transferred, generally cannot be recalled to an original wallet. Moreover, there is a risk that the funds may be moved to a location where no forfeiture or seizure would be possible, at which point the funds could be further laundered into a "privacy" (i.e., untraceable) cryptocurrency. Given that vehicles also can be easily moved, I submit that a seizure warrant is the only means available to reasonably assure the availability of the funds in the Subject Accounts and the Subject Vehicles for forfeiture.

## CONCLUSION

Based on information derived from the foregoing investigation, there is probable cause to conclude that the Subject Accounts and Subject Vehicles contain the proceeds and/or represents property involved in a wire fraud and money laundering scheme performed in violation of Title 18, United States Code, Section 1343. Those funds, which include approximately 0.392548046893253843 ETH, 1,447,841.256478 USDT, and 677,173.700699 USDC) held in **the Subject Accounts,** along with the **Subject Vehicles,** are subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c). Accordingly, I respectfully request that a warrant be issued authorizing the seizure of the subject funds and vehicles.

I declare under penalty of perjury that the foregoing is true and correct to the best

27

of my knowledge.

## **REQUEST FOR SEALING**

It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into other co-conspirators of the subjects. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on a continuing investigation and may severely jeopardize its effectiveness.



Special Agent
Federal Bureau of Investigation


Agent sworn and signature confirmed via reliable electronic means on February
__12__, 2024, pursuant to Fed. R. Crim P. 41(d)(3).



_____
Honorable Renée Harris Toliver
UNITED STATES MAGISTRATE JUDGE

28

## ATTACHMENT A

## ITEMS TO BE SEIZED

- The cryptocurrency wallet that is constituted by the 24 word seed phrase discovered in the file ъезназвания.rtf, which encompasses the wallet having the identifier 0x5d9bc615A06412aDfC6317C9ff228110ec98fF98, including approximately 0.392548046893253843 ETH, 1,447,841.256478 USDT, and 677,173.700699 USDC (**Subject Account A**)

- Binance Holdings Limited account number ▮▮▮▮ belonging to Ianis Antropenko which includes Bitcoin address 1GfSpXKtx9DEECqNhSTfmTzPtkHzourPgR and Ethereum address 0x543253568d9e218e8d15cc5060e68d98cc8f4b30 (**Subject Account B**)

- Binance Holdings Limited account number ▮▮▮▮ belonging to ▮▮▮▮ ▮▮▮▮ which includes Bitcoin address 1G4X91UaWPiKPFGCceGs7ogVs3TdK2f5SZ (**Subject Account C**)

- A Lexus LX 570 with Vehicle Identification Number (VIN) ▮▮▮▮ (**Subject Vehicle A**)

- A 2022 BMW X6M bearing VIN: ▮▮▮▮ (**Subject Vehicle B**)